# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**LINDSEY A. GROSSNICKLE**
Bloom Gates & Whiteleather, LLP
Columbia City, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL A. SETLAK**
Shilts Law Office
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALLISON I. (WAGAMAN) DECLOEDT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1401-DR-39 |
| | ) | |
| SHANE C. WAGAMAN, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-1102-DR-79

**August 15, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Allison (Wagaman) DeCloedt ("Mother") appeals the dissolution court's order denying her motion to relocate and granting Shane Wagaman's ("Father") petition to modify custody and parenting time. Mother presents a single issue for our review, namely, whether the dissolution court's order is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2002, Father and Mother were married, and in 2009, Mother gave birth to H.W. The parties separated in January 2011, and Mother filed a petition for dissolution of the marriage. The parties agreed that Mother would have sole physical and legal custody of H.W., and Father would have parenting time under the Parenting Time Guidelines.

On June 30, 2011, Mother filed a notice of intent to relocate to Texas to live with her boyfriend, Justin DeCloedt. Father objected to Mother's relocation with H.W., and the dissolution court denied her motion following a hearing.

On July 3, 2013, Mother married DeCloedt, who had moved from Texas to California. And on July 23, Mother filed her verified notice of intent to relocate to California. Father filed an objection to Mother's notice, and he filed a verified petition to modify custody, parenting time, and child support. Following a hearing on the pending motions, the dissolution court denied Mother's motion to relocate and granted Father's petition for modification of custody, parenting time, and child support. The dissolution court found and concluded in relevant part as follows:

> 8. The Decree also granted Mother primary physical custody of [H.W.] and Father was to have parenting time with [H.W.] pursuant to the Indiana

2

Parenting Time Guidelines. Mother moved to Goshen, Indiana from Columbia City, Indiana in June of 2011. Father did not object to this move due to the fact that he would still be able to exercise his allotted parenting time and that he would still have the ability to attend [H.W.]'s extracurricular activities.

9. Undisputed testimony established that Father exercised parenting time with [H.W.] per the Indiana Parenting Time Guidelines and every Sunday, which was not on his weekend, in order to make up for the missed mid-week parenting time. The parties would meet at a half-way point for the pickup and exchanges, which was in Warsaw, Indiana. Father has always had standard Guidelines visitation (every other weekend) with [H.W.], including overnights, since the time Mother originally moved out of the former marital residence (over three years ago). Additionally, Father had parenting time with [H.W.] lasting up to a week when Mother traveled out of state.

10. The Decree further required Father to pay Mother child support of $166.00 per week, which was since modified to $194.00 per week. Father has been consistent in his payment of child support and is current in his weekly support obligation.

11. Mother has been employed as a teacher in the past and is capable of earning $692.00 per week, as she stated was her weekly wage in the fall of 2012. Mother is currently employed as a nanny in Goshen, Indiana. Mother does not have employment secured in Orange County, California [where her husband lives].

12. Father has been employed for the last nine (9) years at Warner Electric and earns $1,202.00 per week.

13. Mother intends to move with [H.W.] to Orange County, California to reside with her husband immediately (or the first of the year in 2014) as she testified in Court. Mother has moved five times in less than three years.

14. Mother married Justin DeCloedt on July 3, 2013. Mother filed her intent to relocate on July 23, 2013.

15. Orange County, California is approximately 2,141 miles from Fort Wayne, Indiana.

16. The paternal grandparents, Rick and Diana Wagaman, testified that they see [H.W.] at least once a month and sometimes more often than that,

3

depending on the circumstances. Rick Wagaman further testified as to Father's ability to parent and take care of [H.W.]

17. Rick and Diana Wagaman also testified as to how important it is for them to see [H.W.] on a regular basis and how much the proposed relocation would affect them. [H.W.] also visits with his cousins from Kalamazoo, Michigan on a regular basis.

18. In addition to their regular visits and interactions with [H.W.], the paternal grandparents have a summer trailer in Howe, Indiana, where they camp for two to three months each summer.

19. Father maintains and resides in the former marital residence with his fiancée, Jenna Coffelt, and her two children, [J. and M.] The home is a three bedroom house, located in a neighborhood in Columbia City.

20. [H.W.] is also close to Jenna's parents, who treat [H.W.] as one of their own grandsons. Jenna's parents live in Columbia City, Indiana.

21. [H.W.] has a close relationship with his "stepbrother and stepsister," [J. and M.] [H.W. and M.] share a bedroom with bunk beds. [J. and M.] care for [H.W.] as if he was their little brother. They have been a part of [H.W.]'s life for almost three years.

22. It is planned that [H.W.] will attend the same school as [M.] in Columbia City.

23. Father would ensure that [H.W.] is cared for, taken to the physician ([H.W.]'s previous physician), taken to the dentist when needed, and he would attend school with [M.] and later [J.] as well. Father has demonstrated primary care responsibilities for [H.W.] since he was born.

24. Mother's family (primarily the maternal grandparents) lives in Goshen, Indiana. [H.W.] currently resides with the maternal grandparents, William and Jeanne Binkley.

25. Father ensured [H.W.]'s maternal grandparents that he would make sure they continue to see [H.W.] if [H.W.] is not relocated to California.

26. If [H.W.] was to be relocated to California, Father would not be able to enjoy the once a week in-person contact that he now has with [H.W.]

4

27. Father testified that [H.W.]'s maternal grandfather advised him in August of 2013 that they did not support their daughter's relocation to California.

28. [H.W.] enjoys an extremely close relationship with both sets of grandparents, [J. and M.], and his cousins on both sides.

29. Mother does not have any biological relatives in Orange County, California.

30. Mother's new husband, Justin DeCloedt, moved to California from Texas in order to improve his economic circumstances, including a significant pay increase and opportunity for advancement.

31. Besides a stepsister in Los Angeles, Justin does not have family in Orange County, California. Justin's parents reside in the Mishawaka, Indiana area.

32. Other than the two issues regarding relocation, no parenting/custody disputes of any nature have been litigated by the parties since the entry of the 2011 Decree.

33. Father has regularly exercised extended parenting time as provided in the Decree.

34. Father has been a very active and involved parent to [H.W.] While Mother has had primary physical custody, Father testified as to the activities and events in which Father has assisted and participated.

35. While [H.W.] is now four years old, Father has consistently included [H.W.] in a wide variety of activities and will continue to allow [H.W.] to participate in future activities and athletics, such as soccer and fishing, etc.

36. A relocation would end Father's frequent contact with [H.W.] and would exclude him from his involvement in [H.W.]'s schooling, extracurricular activities, and other activities, as well as the regular and frequent involvement of his family.

37. [H.W.] is reportedly well-adjusted to his current schedule and his community. Mother testified that Father is a good dad. Father testified that Mother is a good mom. No one testified to the contrary regarding either parent.

38. There is an established pattern that Father is consistent with his parenting time with [H.W.], including extended periods of time as would be allowed by the parties' calendars. As [H.W.] approached Kindergarten and age five, Father was going to have additional extended time with [H.W.]

39. A relocation would cause an extreme emotional and financial hardship for Father to ensure that he is able to exercise his parenting time with [H.W.] As Mother suggested for Father, Mother also has the ability to see [H.W.] via Skype or Facetime (via Apple products). Father has the capability to ensure [H.W.] would have contact via telephone or video chat with Mother.

40. Father proposes that Mother shall have parenting time with [H.W.] per the Indiana Parenting Time Guidelines, where distance is a factor. Mother would have additional time to visit with [H.W.] if she returns to Indiana.

41. Mother testified that she will relocate to California even if [H.W.] is not permitted to relocate with her.

THE COURT CONCLUDES:

1. The Court has considered all factors set forth in I.C. 31-17-2.2.

2. The notice Mother was required to file under I.C. [§] 31-17-2.2-1 was served in a timely manner. (See I.C. [§] 31-17-2.2-3(b)).

3. The Court has considered the factors set forth at I.C. [§] 31-17-2.2-1(b), and has weighed the shifting burdens set forth at I.C. [§] 31-17-2.2-5(c) and (d).

4. The Court believes that it is not feasible to preserve the relationship between the Father and [H.W.] through parenting time arrangements, due to the distance of the proposed move, the close relationship between the Father and [H.W.], the close relationship between [H.W.] and both sets of grandparents, and [H.W.]'s close relationship with his soon-to-be stepsiblings.

5. After examining the evidence and hearing the testimony presented, the Court concludes that Mother's relocation is in good faith and for a legitimate reason.

6. Father has accepted the shift of burden and has proven and established that the proposed relocation is not in [H.W.]'s best interests.

6

ORDER

1.      Accordingly, the Court now GRANTS Father's Objection/Motion to Prevent Child Relocation, and now Orders the Mother restrained from relocating [H.W.] from Goshen, Indiana.  Mother's Motion to Relocate is DENIED.

2.      Father's Petition to Modify Custody and Parenting Time is GRANTED.  It is in [H.W.]'s best interest to reside with Father in Indiana.

Appellant's App. at 23-26.  This appeal ensued.

## DISCUSSION AND DECISION

In ruling on Father's petition to modify custody, the court entered findings of fact

and conclusions thereon.  Our standard of review in such cases is well-settled:

We may not set aside the findings or judgment unless they are clearly erroneous.  Ind. Trial R. 52(A); Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000).  In our review, we first consider whether the evidence supports the factual findings.  Menard, 726 N.E.2d at 1210.  Second, we consider whether the findings support the judgment.  Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996).  A judgment is clearly erroneous if it relies on an incorrect legal standard.  Menard, 726 N.E.2d at 1210.  We give due regard to the trial court's ability to assess the credibility of witnesses.  Ind. Trial R. 52(A).  While we defer substantially to findings of fact, we do not do so to conclusions of law.  Menard, 726 N.E.2d at 1210.  We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

C.B. v. B.W., 985 N.E.2d 340, 343-44 (Ind. Ct. App. 2013).

Additionally, the trial court made those findings sua sponte.

When a trial court makes specific findings upon its own motion, the general judgment will control as to the issues upon which the court has not found and specific findings control only as to the issues they cover.  In re Marriage of Snemis, 575 N.E.2d 650 (Ind. Ct. App. 1991).  Thus, it may not be necessary that each and every special finding be correct, and even where one or more special findings are clearly erroneous, the judgment may

7

be affirmed if the judgment is supported by other findings or is otherwise supported by the record. Where, as here, special findings are entered sua sponte, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. Id. While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. Id.

Id. at 344.

When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code §§ 31-17-2.2-1(b); 31-17-2-2-5(a). When the nonrelocating parent objects, the burden is on the relocating parent to show that the proposed relocation is made in good faith and for a legitimate reason. Ind. Code § 31-17-2.2-5(c). If the relocating parent meets that burden, then the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interests of the children. Ind. Code § 31-17-2.2-5(d).

A court must weigh the following factors in considering a proposed relocation, as set forth in Indiana Code Section 31-17-2.2-1(b):

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

8

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

"Other factors affecting the best interest of the child" include, among other things, the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best interests; and the child's adjustment to home, school, and the community. Ind. Code § 31-17-2-8; see also Baxendale v. Raich, 878 N.E.2d 1252, 1256 (Ind. 2008).

The relocation of a custodial parent does not require modification of a custody order. Id. But the court "may consider a proposed relocation of a child as a factor in determining whether to modify a custody order [or] parenting time order. . . ." Ind. Code § 31-17-2.2-2(b). Further, when one parent is relocating, it is not necessary for a court to find a substantial change in one of the "other factors" in Indiana Code Section 31-17-2-8 before modifying custody. See id. at 1257. "We review custody modifications for abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters." K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009) (citation and quotation marks omitted).

Here, Father concedes that Mother has demonstrated a good faith and legitimate reason for moving to California. See I.C. § 31-17-2.2-5(c). Thus, as the dissolution court found, the burden shifted to Father to show that the proposed relocation is not in the best

9

interests of H.W.  See I.C. § 31-17-2.2-5(d).  On appeal, Mother contends that Father has not satisfied his burden of proof.

First, Mother challenges the dissolution court's conclusion that "it is not feasible to preserve the relationship" between H.W. and Father and H.W. and other relatives if H.W. moves to California with Mother.  Appellant's Br. at 10.  Mother points out that she had proposed that Father exercise parenting time with H.W. "for approximately 9-10 weeks each summer, as well as one week of parenting time each Christmas Break and every Spring Break."  Id.  And Mother proposed "regular, if not daily, face to face contact with Father by way of telephone, Skype or FaceTime."  Id.  Finally, Mother states that, by the dissolution court's reasoning, if H.W. stays in Indiana,

> it is not feasible to preserve the relationship between Mother and child.  If Mother's plan did not constitute a reasonable plan to maintain the Father-child relationship, the only conclusion that can be derived from this ruling is that custody shall always be modified with any proposed long distance move when both parents are seemingly good/nice people.

Id.

But Mother's contentions on this issue ignore the dissolution court's findings regarding H.W.'s close relationships with both sets of grandparents, future stepsiblings, and cousins, all of whom live in Indiana or, in the case of his cousins, Michigan.  We cannot say that the dissolution court's conclusion on this issue is clearly erroneous.

Second, Mother contends that the dissolution court erred when it considered the impact of removing H.W. from his primary caregiver and concluded that it is in H.W.'s best interests to do so.  In support of that contention, Mother cites to In re Paternity of X.A.S., 928 N.E.2d 222, 229 (Ind. Ct. App. 2010), trans. denied, where this court stated:

10

Falling under the general factor of the best interests of the child is one of the most important facts contained in the record—X.A.S. has lived with Father for the past nine years. Although moving to another state and away from Mother will undoubtedly cause upheaval in X.A.S.'s life, it would cause far greater upheaval to tear him away from his primary caregiver— the parent with whom he has lived for nearly a decade. The DRCB Report concludes that although X.A.S. has healthy relationships with both parents, it would be best for him to relocate with Father:

> . . . [X.A.S.'s] ultimate sense of home and security is with his father. The fact that [Father] has been his primary caregiver is significant. To be clear, to have one parent three thousand miles away from a child is always less than ideal. However, considering [X.A.S.'s] relationship with his father, and the fact that [Father] has concrete plans involving employment, housing, and education, it is recommended that [Father] retain custody and be allowed to relocate to California.

Here, Mother maintains that

[a]lthough moving to another state and away from Father will undoubtedly cause an upheaval in [H.W.]'s life, it will cause a far greater upheaval to tear him away from Mother who has been his primary caregiver and sole legal custodian, has provided him with a stable and healthy life, and has been involved with his early education and development.

Appellant's Br. at 11. But Mother ignores the differences between this case and X.A.S., namely, a significant age difference (H.W. was four years old at the time of the hearing; X.A.S. was nine years old), and an assessment and report by the Domestic Relations Counseling Bureau ("DRCB") concluding that X.A.S. should relocate with Father. No such assessment was conducted in this case.

Finally, Mother states that

[w]hen considering the "other factors" as contemplated by Ind. Code § 31-17-2.2-1(b)(6), this Court should look to the considerations in Ind. Code § 31-17-2-8. Other than preschool, [H.W.] will not be required to change schools if relocated to California. If there is an established community for [H.W.], it is Goshen, Indiana, which shall necessarily change, as Mother is relocating.

11

Appellant's Br. at 11.  In essence, Mother asserts that, all other things being equal, her role as primary caregiver during H.W.'s life takes precedence over the other factors the dissolution court was to consider.

As the dissolution court observed at the conclusion of the hearing, the undisputed evidence shows that Father and Mother are "both really good parents" and have cooperated in parenting H.W. throughout his life.  Tr. at 188.  The dissolution court stated that it "prefer[red] not to make a decision at all," but that its "job [wa]s to make a decision and follow the law and also keep in mind what's best for [H.W.]"  Id. at 189.  Finally, the dissolution court stated that its decision should not be viewed as a "punish[ment]" for either parent.  Id.

This is obviously a close case, and the dissolution court was forced to make a very difficult decision.  In the end, the dissolution court found that it is in H.W.'s best interests to stay in Indiana with his Father and future stepsiblings, with both sets of grandparents and cousins living nearby.  And, as our supreme court has observed,

> appellate courts give considerable deference to the findings of the trial court in family law matters. . . .  Whether the standard of review is phrased as "abuse of discretion" or "clear error,"[] this deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess.  Hon. Denise R. Johnson, Address at the 2004 Appellate Judges Summit (Nov. 13, 2004).  Secondly, appeals that change the results below are especially disruptive in the family law setting.  Id.  And third, the particularly high degree of discretion afforded trial courts in the family law setting is likely also attributable in part to the "fluid" standards for deciding issues in family law cases that prevailed for many years.  Id. (citing Maurice Rosenberg, Appellate Review of Trial Court Discretion, 79 F.R.D. 173, 175 (1978)).

<u>MacLafferty v. MacLafferty</u>, 829 N.E.2d 938, 940-41 (Ind. 2005). Here, the evidence supports the dissolution court's findings, and the findings support the conclusions. Thus, the findings and conclusions are not clearly erroneous and the dissolution court did not abuse its discretion when it denied Mother's motion to relocate and granted Father's petition to modify custody.

Affirmed.

BAILEY, J., and PYLE, J., concur.