# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2020, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nathan D. Hoggatt
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

David L. Joley
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew Romer,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Theresa Romer,<br>*Appellee-Respondent* | August 28, 2020<br><br>Court of Appeals Case No.<br>20A-DC-651<br><br>Appeal from the<br>Wells Superior Court<br><br>The Honorable<br>Andrew K. Antrim, Judge<br><br>Trial Court Cause No.<br>90D01-1805-DC-40 |

**Vaidik, Judge.**

# Case Summary

Andrew Romer ("Father") appeals the trial court's order allowing Theresa Romer ("Mother") to move their child to Alaska. Though this is a very close case, our highly deferential standard of review compels us to affirm.

# Facts and Procedural History

The following statement of facts is based primarily on the trial court's findings of fact, none of which Father challenges.[1] Father and Mother began dating in 2009 and married in 2016. They have one child together, a daughter, L.R., born in October 2017. Mother had been married twice before and has three children from those marriages, including two school-age daughters who have lived with L.R. since she was born and who are very close with her.

Between 2013 and 2018, Father was violent toward Mother on five occasions. The last two times occurred after L.R. was born and in L.R.'s presence. After the final incident, in March 2018, Father and Mother separated, and Mother obtained a protective order. Father did not see L.R. for the next eight months.

Father filed for divorce in May 2018. In May 2019, Father and Mother reached a settlement. Among other things, they agreed that Mother would have primary

---

[1] The trial court's findings of fact consist largely of a recitation of testimony given at the relocation hearing. It is apparent that the court was accepting as true the referenced testimony, but we encourage it to avoid this practice in the future. *See Pitcavage v. Pitcavage*, 11 N.E.3d 547, 553 (Ind. Ct. App. 2014), *reh'g denied*.

custody of L.R. and that Father would have limited parenting time until May 2020, when he would have full parenting time under the Indiana Parenting Time Guidelines. The trial court signed off on the settlement on May 13, and Mother voluntarily relinquished the protective order a few days later. At the time, both parties were living in or near Wells County.

[5] In June 2019, one month after the divorce was finalized, Mother reconnected with Craig Schwartz, a family friend who Mother had known for twenty-four years but who had been living in Alaska since the late 1990s. They spoke every day, and by July or August, the relationship turned romantic. They saw each other in person for the first time in September, when Schwartz spent two weeks in Indiana. In October, Mother visited Schwartz in Alaska, and they decided to get married.

[6] Mother and Schwartz had a discussion about where they would live. Mother was working as a nurse's aide and was sending L.R. to daycare three days a week. Schwartz owned a construction business in Alaska and was making about five times as much as Mother. He also owned a house where he lived with three of his children. The house had five bedrooms, and Schwartz was in the process of adding a sixth. If Mother and L.R. moved to Alaska, Mother would not work and would not have any daycare expenses, and L.R. would have her own bedroom. For those reasons, and because Schwartz would not be able to recreate his construction business in Indiana, it was decided that Mother would move to Alaska with L.R. and her two older daughters, whose father agreed to the move.

[7] In early November, Mother filed a Notice of Intent to Relocate indicating that she would be marrying Schwartz on December 1 and that she intended to move to Alaska with L.R. on December 27. Father objected to L.R. being moved and asked that he be awarded primary custody if Mother were to move.

[8] The trial court held a hearing on the matter over two days in December. Mother confirmed that she and Schwartz had gotten married on December 1, the date indicated in her notice. She acknowledged that she and Father have gotten along very well since the divorce and that L.R. loves Father, but she also testified that L.R. had only spent a few overnights with Father since the parties separated (consistent with the limited parenting time agreed to in the settlement), she has handled all of L.R. medical appointments, L.R. does not like to be away from her, and it would be very traumatic for L.R. to be separated from Mother and her older sisters. Father also testified and called several witnesses who attested to his close relationship with L.R.

[9] After the hearing, the trial court issued an order allowing Mother to move L.R. to Alaska. At Mother's request, the court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). The court found the facts stated above but also found that there is an "extreme distance" between Indiana and Alaska, "Mother's move will place an extreme hardship and expense" on Father, and "the feasibility of [preserving] the relationship between [Father and L.R.] through suitable parenting time considering the financial restraints on all parties will be extremely difficult with Mother's proposed move." Appellant's App. Vol. II pp. 17-18. However, it ultimately concluded that the move would

be in good faith and for a legitimate reason and would be in L.R.'s best interest. The court ordered Mother to bring L.R. to Indiana for three two-week visits per year, twice at Mother's expense and once at Father's expense.

[10]    Father now appeals.

# Discussion and Decision

[11]    Father contends that the trial court erred by allowing Mother to relocate L.R. to Alaska. Where, as here, a trial court enters findings of facts and conclusions thereon under Trial Rule 52(A), we generally review whether the evidence supports the findings and then whether the findings support the conclusions and judgment. *T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011), *reh'g denied*. However, Father does not challenge any of the trial court's findings of fact, so we need only determine whether those findings support the court's conclusions and judgment.[2] In doing so, we remain mindful that trial courts are afforded particular deference in family-law matters, given their unique, direct

---

[2] At the end of his opening brief, Father says the following, under the heading "Findings not supported by evidence":

> Over Father's counsel's objection (Tr. p. ) [sic], Mother was permitted to be led through thirty-five (35) pages of transcript where her counsel led Mother to respond she was in fear essentially for a decade, suffered abuse, etc. However, this is the very first time these stories were told. And further, three of the tales allegedly occurred before their Child's birth, and the fourth asks for speculation on the physics of a disintegrating coffee cup. In essence, this was not an issue for the trial court's concern, yet it is the only negatives that can be put out into the marketplace or ideas, but only for red herring distraction.

Appellant's Br. p. 16. He does not support this argument with any citations to the record, nor does he identify any specific findings of fact he believes are incorrect.

interactions with the parties and their superior position to ascertain information and apply common sense. *Id.* at 784.

[12] Indiana Code section 31-17-2.2-5(e) provides that when a nonrelocating parent objects to the proposed relocation of a child, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Subsection (f) provides that if the relocating individual meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Here, the trial court concluded that Mother met her burden under subsection (e) and that Father did not meet his burden under subsection (f). Father challenges both conclusions.

# I. Good Faith and Legitimate Reason

[13] Father first argues that the trial court erred by concluding that Mother's relocation is made in good faith and for a legitimate reason. "[I]t is common in our society that people move to live near family members, for financial reasons, or to obtain or maintain employment." *T.L.*, 950 N.E.2d at 787-88. "We infer that these and similar reasons . . . are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id.* at 788. Here, Father notes that Mother filed her notice of intent to relocate just six months after the divorce was finalized, Mother will not be working in Alaska, Mother has no family in Alaska, and this is Mother's fourth marriage. However, the trial court made several findings that support its conclusion on this issue.

Specifically, the court found that: Mother rekindled her relationship with Schwartz during the summer of 2019, several months before she filed her notice of intent to relocate; the relationship eventually became romantic; the relationship intensified as Schwartz spent time in Indiana in September; she traveled to Alaska in October and Schwartz proposed during her visit; and she married Schwartz in December. The court also found that Schwartz owns his own construction company in Alaska, earns much more money than Mother, and would be unable to recreate his business in Indiana, "as he had spent a great amount of time in Alaska to create the construction business and the necessary contacts to maintain such business." Appellant's App. Vol. II p. 13. Finally, the court found that Mother and Schwartz had a "difficult" discussion about whether they would live in Alaska or Indiana, an indication that Mother did not come to her decision lightly. *Id.* In light of these findings, we affirm the trial court's conclusion that Mother has a good-faith and legitimate reason for relocating to Alaska.[3]

---

[3] Father argues:

> Mother entered into the mediated Marital Settlement Agreement with Father and agreed to phase in Father's full custody, while she was in a romantic relationship with another gentleman. Mother did not inform Father of her relationship with this new man or her intent of moving to the doorsteps of the Kremlin at the time of the Decree, which shows she acted in bad faith in seeking to relocate so soon after the mediated Marital Settlement Agreement and that she did not have a legitimate reason to relocate.

Appellant's Br. p. 12. Father does not cite any evidence that Mother was in a "romantic relationship" with Schwartz, or had the intent to move to Alaska, when the divorce case was settled in May 2019. Mother testified that she did not reconnect with Schwartz until June and that the relationship did not become romantic until July or August.

# II. Best Interest

[15] Father also challenges the trial court's conclusion that the move to Alaska is in L.R.'s best interest. Our review of the best-interest determination "requires us to view the evidence in a light most favorable to the trial court's decision and defer to the trial court's weighing of the evidence." *T.L.*, 950 N.E.2d at 788-79.

[16] Father argues that, if L.R. moves to Alaska, he "would be unable to maintain his current parenting time schedule" or to "exercise his opportunity for additional parenting time." Appellant's Br. p. 16. He notes that he "has regular, significant contact with [L.R.] that would not continue if [L.R.] were allowed to relocate with Mother." *Id.* And he points out that the move would make it very hard for him to be involved in L.R.'s "milestones, education, extra-curricular activities, and other events, such as holidays and birthdays." *Id.*

[17] All of this is true, but again, the trial court made several findings that support its best-interest determination. The court found that L.R. is closely bonded with Mother and her two older sisters, and it would be very traumatic for her to be separated from them. It also found that Schwartz makes enough money that Mother would not have to work in Alaska and would not have any daycare expenses. And it found that Mother has been L.R.'s primary caregiver for her entire life (and for one eight-month stretch her sole caregiver), and L.R. had only spent a few overnights with Father since the parties separated in March 2018.

[18] The trial court also found that "there is a pattern of domestic and family violence perpetrated by [Father] against [Mother], including incidents in the presence of [L.R.]." Appellant's App. Vol. II p. 12. Father asserts that this finding was based on "Mother's self-serving statement of uncorroborated violence from years gone by." Appellant's Br. p. 13. We make several observations. First, while Father made a relevance objection to Mother testifying about pre-divorce domestic violence, he does not appeal the trial court's decision to allow that testimony. Second, when Father testified, he did not deny or contradict any of Mother's testimony about domestic violence. And third, as Father himself acknowledges, the factors listed in Indiana Code section 31-17-2-8, including "[e]vidence of a pattern of domestic or family violence by either parent," can be considered in relocation cases. *Id.* at 14 (citing *T.L.*, 950 N.E.2d at 785). While all involved agree that the violence stopped after the parties separated and that Father and Mother were getting along well by the time Mother filed her notice of intent to relocate, the history of violence, some in the presence of L.R., was certainly a valid consideration by the trial court. In short, we believe this finding, along with the other findings noted above, supports the trial court's decision that moving to Alaska with Mother is in L.R.'s best interest.

[19] Father cites two cases where trial courts concluded that proposed relocations were not in the best interest of the children, and we affirmed. *See DeCloedt v. Wagaman*, 15 N.E.3d 123 (Ind. Ct. App. 2014); *T.L.*, 950 N.E.2d 779. But those decisions are entirely consistent with our decision here. Both cases were close

calls, just like this case is a close call. *See DeCloedt*, 15 N.E.3d at 131 ("This is obviously a close case, and the dissolution court was forced to make a very difficult decision."); *T.L.*, 950 N.E.2d at 791 (acknowledging that "other reasonable conclusions than that reached by the trial court in the present case were possible"). Precisely for that reason, we deferred to the trial courts. We do the same here.

[20] Affirmed.

Bailey, J., and Baker, Sr. J., concur.